Argued December 4, 1925, reversed and suit dismissed January 12, 1926.

# GOWAN–LENNING–BROWN COMPANY *v.* MARTHA A. KINGMAN.

### (242 Pac. 351.)

**Witnesses—Produced by Plaintiff are Vouched for by Him as Credible.**

1. In view of Section 861, Or. L., limiting impeachment of witness by the party producing him, witnesses produced by the plaintiff are to be considered vouched for by him as credible, or at least not too infamous as to be wholly unworthy.

**Fraudulent Conveyances — Transactions Between Relatives Closely Scrutinized.**

2. In a suit to set aside conveyance between relatives, claimed to be in fraud of creditors, the transaction must be closely scrutinized.

**Fraudulent Conveyances — Evidence Held not to Support Finding That Bankrupt's Conveyance to Mother was Fraudulent.**

3. In a suit to set aside conveyance of bankrupt to mother to discharge rent and board obligations as being fraud on creditors, under Section 10170, Or. L., evidence *held* not to support decree setting aside conveyance for fraud, in view of Section 10174.

---

Bankruptcy, 7 **C. J.**, p. 158, n. 27, p. 172, n. 34.
Fraudulent Conveyances, 27 **C. J.**, p. 495, n. 58, p. 506, n. 95, p. 535, n. 45, p. 642, n. 51, p. 836, n. 68, p. 837, n. 71.

From Douglas: James W. Hamilton, Judge.

Department 1.

### Reversed and Suit Dismissed.

For appellant there was a brief over the name of *Mr. A. E. McManus,* with an oral argument by *Mr. B. L. Eddy.*

---

2. Transactions between relatives as fraud on creditors, see note in 32 **L. R. A.** 67.
Preference of relative by transfer of property in satisfaction of debt, see note in 36 **L. R. A.** 341.

For respondent there was a brief over the name of *Messrs. Middaugh, Cuthbert & Smythe,* with an oral argument by *Mr. Fred E. Smith.*

BURNETT, J. — This is a suit originally commenced by a trustee in bankruptcy, operating under authority of a United States District Court in Minnesota, to set aside a conveyance made by the bankrupt alleged to be in fraud of creditors.   The present plaintiff, Gowan-Lenning-Brown Company, claiming to have purchased from the trustee all choses in action accruing to the trustee, was substituted as plaintiff and essays to prosecute the suit in its own interest.

Agnes F. Kingman, a *feme sole,* owned a grocery store in Duluth, Minnesota.   She began business in the latter part of 1901 and continued to the month of September, 1917.   For about fifteen years the business was carried on in a storeroom, part of a building owned by the defendant, Martha A. Kingman.   The upper part of the building was divided into apartments, in one of which lived the defendant and her family, consisting of her husband and two daughters, one of the latter being the bankrupt.   The bankrupt herself took no part in the direction of the business as she was otherwise employed.   Her father had exclusive management of the concern as her agent.   All the time that the store was kept in the building no rent had been paid.   Likewise it appears that all the rents of the apartments not occupied by the family had been collected by the father and turned into the business without recompense to the defendant.   The bankrupt had acquired the title to a quarter-section

of timber land in Douglas County, Oregon, which she had held for several years. On November 20, 1916, she conveyed this tract of land, being the one now in dispute, to her mother, the defendant, to reimburse the latter for the rent of the store, for the money that had been collected as rents from the apartments and for the board and room of the bankrupt covering several years. At that time the business was a going concern and continued until September 12, 1917, when she was duly adjudged bankrupt.

The complaint is for the purpose of setting aside this conveyance on the ground that it was made with the intent to hinder, delay and defraud the creditors of the bankrupt. The actual conveyance is admitted, but the evil motive ascribed to the parties, namely the intent to defraud her creditors, is denied. There was a decree for the plaintiff and the defendant appealed.

1. The bankrupt herself was called as a witness for the plaintiff and she testified substantially as outlined in the foregoing statement of facts. Likewise her father, who had managed the business, was called also for the plaintiff. His testimony was to the same effect, that the rent of the property had accrued through the years that the business had been carried on in the building, and was unpaid. In addition thereto he testified that he had collected the rents from the apartments belonging to the defendant and had turned them into the business, for all of which there had been no recompense to the owner of the premises. The rent was reckoned at $75 per month, and the board and room of the daughter at $20 per month. There is no testimony that either of these terms was unreasonable. These wit-

nesses produced by the plaintiff are vouched for by
the plaintiff as credible, "or at least not too in-
famous as to be wholly unworthy." *State* v. *Steeves,*
29 Or. 85 (43 Pac. 947). This principle is also an-
nounced in *Chance* v. *Graham,* 76 Or. 199 (148 Pac.
63), and in *Sabin* v. *Kyniston,* 81 Or. 358 (159 Pac.
69). It is said:

"The party producing a witness is not allowed to
impeach his credit by evidence of bad character, but
he may contradict him by other evidence, and may
also show that he had made at other times state-
ments inconsistent with his present testimony, as
provided in Section 864." Or. L., § 861.

All the parties connected with the affair, namely,
the father and mother and the daughter bankrupt,
unite in saying that the transaction was in the ut-
most good faith, without any intention whatever of
defrauding any creditor, but to pay the honest debt
owing to the mother for the use of her building and
the rents which had been collected for the apart-
ments and used in the business. They say that the
business was a going concern and continued so for
about ten months after the conveyance. There was
no effort to impeach any witness. The story they
told was plain and plausible. There is nothing what-
ever to dispute these witnesses.

2. It is urged that it is a transaction between rela-
tives and must be closely scrutinized, which is true
as a principle of law and practice, but consanguin-
ity does not spell outlawry. If it be true, and there
is no syllable of testimony to dispute it, that the
mother owned the building in which the business was
conducted, and the apartments above it, the rent of
which was collected and used in the management of
the business, an obligation to repay her at once

arose and she was entitled to such payment the same as any other person.

3. The execution of the conveyance occurred more than four months prior to the adjudication in bankruptcy and hence is not within the statute against preferences. At the time the deed was made the bankrupt had a right to pay any creditor she chose, even to the exclusion of others, except as the same might be set aside as a preference if made within four months prior to the adjudication. It is true that supplies were taken from the store for the use of the family from time to time, but in what amount is not stated. If the transaction was between strangers there could be no question whatever of its validity on the testimony adduced. There is nothing in the record, although it occurred between relatives, to change the matter as one of fact.

It does not lie in the mouth of the plaintiff to produce the testimony of witnesses who utterly refute his contention and then, without any additional evidence, to urge the court to utterly disregard the testimony he adduced and find in his favor directly contrary to his own testimony. It is true that Section 10170, Or. L., condemns conveyances made with intent to hinder, delay or defraud creditors. In addition to that, however, Section 10174, Or. L., provides:

"The provisions of this chapter shall not be construed in any manner to affect or impair the title of a purchaser for a valuable consideration, unless it shall appear that such purchaser had previous notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor."

The defendant declares on oath that she had no intent on her part to defraud any creditor and had

no knowledge of such intent on the part of the daughter, bankrupt, or the father who managed the business. In fact, all the parties concerned deny emphatically that there was any intent whatever to defraud any creditor.

It is urged that in some previous credit statements made to one of the principal creditors several years before the conveyance, it was declared that the daughter was the owner of the property involved. No one denies that and it was in fact true at that time, but no such statement was made after the conveyance attacked in this suit.

The plaintiff is in court without any proof whatever to sustain the essential elements of his complaint. We cannot give way to mere interested suspicion in the face of direct positive evidence to the contrary, especially when that testimony is introduced by the plaintiff. In view of the conclusion on the merits it is unnecessary to consider other questions presented about abatement of the suit by discharge of the trustee or the right of a creditor to sue without reducing his claim to judgment, etc.

The decree of the Circuit Court is reversed and the suit dismissed.     REVERSED AND DISMISSED.

McBRIDE, C. J., and COSHOW and RAND, JJ., concur.